**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**RONALD L. COLE, #L1717** **PLAINTIFF**

**VS.** **CIVIL ACTION NO: 3:05-CV-654-WHB-LRA**

**CHRISTOPHER EPPS, ET AL** **DEFENDANTS**

---

# REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

THIS CAUSE is before the undersigned United States Magistrate Judge for report and recommendation on the Motion for Summary Judgment [#30] filed by Dr. Joseph Blackston [hereinafter "Defendant Blackston"] on April 30, 2007. Also before the Court is the Motion for Permanent Injunction [#27] and Motion for Temporary Restraining Order [#29], filed by Ronald L. Cole [hereinafter "Plaintiff"] on April 27, 2007, and on April 30, 2007. The undersigned has considered the motion, affidavits, and supporting memorandum [#31], as well as Plaintiff's allegations as contained in his pleadings [#9 and #13] and by his sworn testimony at the omnibus hearing conducted in this cause on January 29, 2007.

This cause is also before the Court upon a review under 28 U.S.C. §1915(e)(2). The Prison Litigation Reform Act, 28 U.S.C. § 1915(e)(2) (as amended), applies to prisoner proceedings *in forma pauperis* and provides that "the court shall dismiss the case at any time if the court determines that . . .(B)

the action or appeal -- (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." Since Plaintiff was granted *in forma pauperis* status, Section 1915(e)(2) applies to his case.

**SUMMARY JUDGMENT STANDARD**

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings or discovery, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Lynch Properties, Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). Once the moving party has satisfied this burden, the non-moving party must go beyond the pleadings and, by its own evidence, whether by affidavits or otherwise, set forth specific facts showing a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431-32 (5th Cir. 1998).

**DISPUTED AND UNDISPUTED FACTS**

Jurisdiction of this case is based upon 42 U.S.C. § 1983. Plaintiff is in the custody of the Mississippi Department of Corrections, having been incarcerated in July, 2002, after being convicted of two felony counts of child molestation and sentenced to ten years in prison. He is incarcerated at the medical unit at the Central Mississippi Correctional Facility. All of his complaints relate to the

conditions of confinement during his incarceration at that facility. Before he was incarcerated, Plaintiff suffered from a myocardial infarction, coronary artery bypass surgery, chronic obstructive pulmonary disease, prostate cancer, a radical prostatectomy, urinary incontinence, hypertension, dyslipidemia, arthritis, a left heel fracture, vertebral artery disease, obesity, a 53 year history of smoking, unknown surgery to his pelvis and left lower leg, and depression. Ex. 2.

Plaintiff contends that he is confined with sick inmates who have hepatitis C, HIV, staph infections, psoriasis and shingles. He comes into contact with other inmates' blood, and the cleaning is insufficient to prevent infections or contagious diseases. All of the 60 inmates housed there use the same shower and bathroom and shave at the same sink. According to Plaintiff, herpes, venereal warts, and cirrhosis are rampant throughout the unit because of using the same facilities and due to the inadequate cleaning processes used. Plaintiff's February 28, 2006, Amended Complaint charges that Defendant Dr. Blackston, the Medical Director for CMCF, is responsible for the procedures for preventing exposure to contagious diseases; Dr. Blackston has failed to take the appropriate actions to prevent such exposure. According to Plaintiff, Defendant Dr. Blackston follows a policy of providing no treatment, no surgery, no services, and no medication if it costs too much. Plaintiff does not identify any infectious disease he has contracted due to conditions at the prison, nor

does he identify any medical procedure he was denied due to the expense, or due to any other reason.

Defendant Dr. Blackston has executed an Affidavit [1] setting forth pertinent facts which have not been disputed by Plaintiff. Dr. Blackston was employed by Correctional Medical Services, Inc. (CMS) as the Medical director at CMCF in Pearl, Mississippi, from September, 2004, to July, 2006. He is currently the Medical Director of Health Systems of Mississippi. CMS contracted with MDOC to provide the necessary medical, mental, and dental care for MDOC inmates at CMCF and other MDOC facilities during the period commencing on July 1, 2003, and ending on June 30, 2006. CMS's contract with MDOC provided that MDOC was responsible for maintaining the CMCF facilities, to include all housekeeping services. Furthermore, MDOC was responsible for providing bedding and linens for medical use at CMCF. Defendant Dr. Blackston's duties did not include providing for the cleanliness and hygiene for CMCF facilities, or to conduct inspections of the housing.

According to Defendant Dr. Blackston, teams from the National Commission on Correctional Health Care ("NCCHC") surveyed the CMCF

---

[1] Dr. Blackston's Affidavit is attached to his Motion for Summary Judgment as Exhibit 3. MDOC information is Exhibit 1; Plaintiff's medical records are Exhibit 2; and, health department reports are a separate attachment to the motion, Exhibits A & B. All documents and exhibits referred to herein are those attached to Defendant's motion and referenced in the motion.

facilities during the pertinent period and concluded that CMCF met all the requirements of accreditation. The NCCHC used its Standards for Health Services in Prisons, which are considered the "benchmark" standards for establishing and measuring a correctional facilities health services system.

Ten days after Plaintiff's initial Complaint was filed, the Commission on Accreditation for Corrections and the American Correctional Association performed a standards compliance reaccreditation audit for CMCF during October 24-27, 2005. The audit resulted in ACA re-accrediting CMCF.

According to Defendant Dr. Blackston, he did not observe any condition that exposed inmates to contagious or infectious diseases, and Plaintiff never personally complained to him of any such condition. Blackston Affidavit at ¶ 20.

Plaintiff's medical records are attached to Defendant's motion. These records contain 310 pages and show an extensive past medical history, and spanning services rendered at CMCF from July 1, 2002, through January 28, 2007. (Ex. 2). The records confirm that Plaintiff received medical treatment on a regular basis throughout his incarceration, having approximately 100 encounters with health care personnel. Plaintiff received regular treatment for his chronic problems of hypertension, dyslipidemia, cardiac disease, pulmonary disease, and depression. He also underwent multiple diagnostic studies, such as x-rays, lab work, urinalyses, tuberculosis skin tests, and electrocardiograms. Six x-rays taken were negative for acute pathology; Plaintiff's white blood cell

count was normal on eleven occasions from July 3, 2002, through October 27, 2006. Ex. 2. Three TB tests were negative, and four urinalyses revealed no infections. Only one time was Plaintiff's temperature elevated, and he complained of flu-like symptoms at that time.

Plaintiff did complain of skin infections and was treated with various medications, including topical steroid, antibiotic, and anti-fungal agents, as well as oral antibiotic and anti-fungal medications. According to Dr. Blackston, Cole's pre-existing and ongoing incontinence, coupled with his use of adult diapers, contributed to his skin infections, particularly in the groin area. Ex. 2 at CMCF00004, 00009, CMCF00013, 00042, 00048. Defendant Dr. Blackston's name appears only two times in Plaintiff's medical records, once to clarify a fioricet prescription and once to approve an optometry consult. The records indicate he was treated by at least thirteen physicians and physician assistants during his incarceration.

Plaintiff has never alleged that Defendant Dr. Blackston, or any of the named Defendants, personally did anything to him. His allegations are only general challenges to the system of care and to the system of cleaning and hygiene at CMCF. Because Defendant Dr. Blackston was medical director, Plaintiff charges that he was responsible for preventing exposure to contagious diseases. According to Plaintiff, Defendant Dr. Blackston failed to take the appropriate actions to prevent such exposure.

## ANALYSIS OF THE APPLICABLE LAW TO THE FACTS IN PLAINTIFF'S CASE

42 U.S.C. Section 1983 prohibits the deprivation of constitutional rights under color of state law. As the United States Supreme Court has taught, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment applies to the State of Mississippi and its agencies by virtue of the Due Process Clause of the Fourteenth Amendment, and it prohibits the infliction of cruel and unusual punishment for crimes. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). "The Cruel and Unusual Punishment Clause of the Eighth Amendment protects an inmate from improper medical care, but only if the care is 'sufficiently harmful to evidence deliberate indifference to serious medical needs.'" *Praylor v. Texas Department of Criminal Justice*, 430 F.3d 1208, 1209 (5th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The amendment requires prison officials to provide humane conditions of confinement, including adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

When a complaint involves conditions that are an element of confinement, as opposed to those that are a part of punishment, an inquiry must be made into the state of mind of the defendant prison officials. *Seiter*, 501 U.S. at 300-02. For such a claim to be viable, the official must exhibit "deliberate indifference" to the welfare of the inmate. *Id*. at 303. The elements of proof

in a case involving conditions of confinement are twofold and include: (1) an objective component, under which the inmate must prove his exposure to a harm or injury that violates contemporaneous standards of decency; and (2) a subjective component, under which the inmate or pretrial detainee must prove that the prison authorities' current conduct evidences a deliberate indifference to that exposure. *Helling*, 509 U.S. at 35-36. In other words, under the objective component, the deprivation alleged must be "sufficiently serious," resulting in "a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective component, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

In defense, prison officials may show that they did not know of the indications of substantial danger and were, therefore, unaware of the danger, or that they knew the indications but believed that the risk involved was "insubstantial or nonexistent," or that they "responded reasonably to the risk, even if the harm ultimately was not adverted." *Id*. at 844-45.

Under the case law discussed above, Cole must prove two elements:

1. Cole "must prove objectively that he was exposed to a substantial risk of serious harm." *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002).

2. Cole "must show that [Dr. Blackston] acted or failed to act with deliberate indifference to that risk. ... The deliberate indifference standard is a subjective inquiry; [Cole] must establish that [Dr.

> Blackston was] actually aware of the risk, yet consciously disregarding it...". *Id.* at 262.

Under the facts as shown by the supporting affidavits, and as evidenced through the medical records, Plaintiff was never at risk for any serious harm. He was treated for all his complaints, and he never contracted any contagious or infectious disease. He had a skin fungus for which he was treated. Although he alleges that his living conditions are unsanitary, his unit passed all accreditation requirements during the pertinent period. He has not even alleged that he was actually *harmed*; he has only alleged that he might eventually be harmed. He is not pleased with the cleaning and hygienic conditions and procedures utilized. His allegations simply do not rise to a constitutional violation, and no serious harm resulted. A review of the Plaintiff's medical records confirm that the Plaintiff received regular treatment for all his conditions, and that he has no permanent serious injury as a result of his treatment. He cannot show that he was placed at risk for serious harm by his conditions of confinement.

Additionally, as the Fifth Circuit has stated, "[d]eliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). The facts in Plaintiff's case confirm that no Defendant or Defendant's employee **intended** to inflict pain of any kind. The standard for finding "deliberate indifference" is a **subjective** inquiry, and the prisoner must

show that the jail officials were **actually aware of the risk**, yet consciously disregarded or ignored it. *Farmer v. Brennan,* 511 U.S. 825, 837-839 (1994). Therefore, **actual knowledge and conscious disregard** of the risk of harm to the plaintiff is required before liability can be found. *Id.* Furthermore, deliberate indifference cannot be simply inferred from a prison official's mere failure to act reasonably, i.e., from negligence alone. *Lawson v. Dallas County*, 286 F.3d at 262-63, citing *Hare v. City of Corinth, MS*, 74 F.3d 633, 649 (5th Cir. 1996).

**CONCLUSION AND RECOMMENDATION**

The undersigned finds that no genuine issue of material fact exists in this case. The medical care provided met constitutional muster, and Defendant did not intentionally expose Plaintiff to any serious risk of harm. The undersigned finds that Defendant Dr. Blackston is entitled to a judgment at law on all of his legal theories: (1) that only a *respondeat superior*-based claim has been made against him, and it must fail; (2) that Plaintiff cannot show Dr. Blackston violated his Eighth Amendment rights; and (3) that Defendant Dr. Blackston is entitled to qualified immunity from this suit. Accordingly, the Complaint and Amended Complaint should be dismissed with prejudice, and Final Judgment in favor of Dr. Blackston should be entered.

The remaining Defendants in this case are Christopher Epps, Commissioner of MDOC; Margaret Bingham, Superintendent; and, Jackie

Parker, Warden at CMCF. Although they have not joined in the dispositive motion, the undersigned has also considered the claims against them in the review of Dr. Blackston's motion, and in consideration of Plaintiff's testimony at the omnibus hearing. Under the case of *Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), as modified by *Neitzke v. Williams*, 490 U.S. 319 (1989) and *Denton v. Hernandez*, 504 U.S. 25 (1992), the claims of Plaintiff must have an arguable basis in law or fact; otherwise, dismissal under 28 U.S.C. § 1915 is appropriate. Considering the law on these issues, as set forth by Defendant Dr. Blackston, and in consideration of Plaintiff's allegations, as set forth in his pleadings and in his testimony, the Court holds that his claims have no basis either in law or in fact against the remaining Defendants and, therefore, are frivolous[2] and fail to state a claim on which relief may be granted. For these reasons, this action should be dismissed against all Defendants pursuant to 28 U.S.C. §1915(e)(2)(B)(I) and(ii).

For the above discussed reasons, it is the recommendation of the undersigned Magistrate Judge that the Motion for Permanent Injunction [#27] and Motion for Temporary Restraining Order [#29], filed by Ronald L. Cole [hereinafter "Plaintiff"] on April 27, 2007, and on April 30, 2007, be **denied**.

---

[2]"Frivolous" in this context is a legal term of art that indicates that, although the Plaintiff's allegations are serious to him, and may, indeed, be based on a tangible injury, the theory on which his claims are based are "indisputably meritless" in a legal sense. *See Allison v. Kyle*, 66 F.3d 71, 73 (5th Cir. 1995).

It is the further recommendation that Defendant's Motion for Summary Judgment [#30] filed in the instant case on April 30, 2007, be **granted**, and that the complaint and amended complaint be dismissed with prejudice. As to the other Defendants, the complaint and amended complaint should be dismissed under 28 U.S.C. §1915, and Final Judgment in favor of all of the named Defendants should be entered.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. §§636, *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

IT IS SO ORDERED, this the 10th day of September, 2007.

S/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE